ROSA K. HIRJI, SBN 204722
JENNY CHAU, SBN 274360
**LAW OFFICES OF HIRJI & CHAU, LLP.**
5173 Overland Avenue
Culver City, California 90230
(310) 391-0330 * (310) 943-0311 fax
rosa@rkhlawoffice.com

Attorneys for Plaintiffs PETER SILVA, and JUDY MAGNUSON, and M.M.M.S., a minor by and through her Guardian ad Litem, PETER SILVA

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| PETER SILVA and JUDY MAGNUSON, and M.M.M.S., a minor by and through her Guardian ad Litem, PETER SILVA | Case No.: 2:17-CV-3138 JAK (AGRx) |
| Plaintiffs, | Judge: John Kronstadt |
| vs. | **SECOND AMENDED COMPLAINT FOR DISABILITY DISCRIMINATION** |
| PALMDALE SCHOOL DISTRICT, a public entity; AMBER ALLINGTON, and DOES 1 through 10, inclusive, | |
| Defendants. | |

Plaintiff M.M.M.S. ("M.S."), a disabled child, and her parents bring this action against a school district and teacher who failed to accommodate M.S., and then retaliated against her parents' advocacy efforts by seeking a restraining order that excluded M.S. from school.

In support of this complaint (the "Complaint"), Plaintiff alleged as follows:

## JURISDICTION AND VENUE

1.      Defendants removed this action pursuant to the provisions of 28 U.S.C. § 1441 (b) and (c) from the Superior Court of California, invoking jurisdiction of this Court.

2.      Plaintiffs allege violations of the Americans with Disabilities Act (42 U.S.C. §§12131 et seq.) ("ADA"), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794 et seq.) ("Rehabilitation Act"), such that the jurisdiction of this Court is proper pursuant to 28 U.S.C. §§1331 and 1343.

3.      Plaintiffs additionally allege violations the Unruh Civil Rights Act ("Unruh Act") (Cal. Civ. Code § 51 (e)(1)) and the Court can properly exercise supplemental jurisdiction under 28 U.S.C. §1367.

4.      Venue in this Court is proper under 20 U.S.C §1391(b) because Defendants are located within Los Angeles County, which is within the jurisdiction of this district and all of the events that are the subject of this complaint took place within the jurisdiction of this district.

## PARTIES

5.      Plaintiff M.S is a minor. And at all times pertinent to this Complaint, M.S. has been, a natural person residing in the City of Palmdale, County of Los Angeles, state of California.

6.      Plaintiff PETER SILVA ("SILVA") is, and at all times pertinent to this Complaint has been, a natural person residing in the City of Palmdale, County of Los Angeles, state of California. SILVA is the guardian ad litem for M.S. for this lawsuit.

7.      Plaintiff JUDY MAGNUSON ("MAGNUSON") is, and at all times pertinent to this Complaint has been, a natural person residing in the City of Palmdale, County of Los Angeles, state of California.

8.      Defendant PALMDALE SCHOOL DISTRICT ("PSD") is, and at all times

SECOND AMENDED COMPLAINT

pertinent to this Complaint has been, a unified school district as defined in Education Code, section 83, whose territorial jurisdiction lies within the County of Los Angeles, State of California.

9.     Defendant AMBER ALLINGTON ("ALLINGTON") is, and at all time pertinent to this Complaint has been, a natural person residing in the County of Los Angeles, State of California.

10.     Plaintiff is ignorant of the true names of defendants DOES 1 through 10, inclusive ("Doe Defendants"), and therefore sue those defendants by such fictitious names. Plaintiff will seek leave of court to amend this complaint to allege said defendants' true names and capacities as soon as Plaintiff ascertains them.

11.     Plaintiff alleges, (1) that at all times herein mentioned, the ALLINGTON and Doe Defendants were, and each of them was, acting as a principal and as the duly authorized acting agent, and/or employee of each of Defendant PSD; (2) that all acts and things herein alleged to have been done by ALLINGTON and the Doe Defendants were done on their own behalf, and on behalf of Defendant PSD; and (3) that said acts were within the course and scope of their employment for Defendant PSD.

## FACTS COMMON TO ALL CLAIMS

12.     Plaintiff M.S. was 8 years old at the time of the violations alleged herein.

13.     Plaintiff SILVA is Plaintiff M.S.' father.

14.     Plaintiff MAGNUSON is Plaintiff M.S.' mother.

15.     At all times pertinent to this Complaint, M.S. was a student eligible to be enrolled in PSD's programs.

16.     During times pertinent to this Complaint, ALLINGTON was a teacher at PSD.

17.     M.S. is diagnosed with Hyperinsulinism/Hyperammonemia Syndrome and Glutamate Dehydrogenase, a rare endocrine disorder and which requires daily management to prevent her blood sugar and ammonia levels from reaching dangerous

levels.

18.   As a result of her disorder, M.S. can get hypoglycemic at times which presents with irritability, nervousness, poor concentration, unusual speech, and disorientation.

19.   M.S.' condition substantially limits her life activities, including her ability to learn, concentrate and attend school.

20.   By virtue of her disabilities, M.S. required accommodations, related aids and services at school in the form of daily checks on her blood sugar by the school nurse, reduced class assignments, the ability to eat and drink in the classroom, and to use the restroom as needed throughout the school day.

21.   Due to her diagnosis, PSD found M.S eligible as a special education student pursuant to the Individuals with Disabilities in Education Act (42 U.S.C. §1400 et. seq.).

22.   Defendant PSD developed an Individual Education Plan and Healthcare Plan for M.S., which provided for nursing services, detailed instructions on monitoring her blood sugar throughout the day, and a provision that M.S. should be able to snack, drink, and use the restroom as needed.

23.   Defendant PSD's Healthcare Plan additionally stated that if M.S. exhibited symptoms of elevated ammonia, that her parent and school nurse were to be contacted immediately.

24.   Defendant PSD's Healthcare Plan also stated that if M.S .began to lose consciousness or was having a seizure, her parents would be called after paramedics had been summoned.

25.   During the 2014-2015 school year, ALLINGTON was M.S.' third grade teacher.

26.   During the 2014-2015 school year, ALLINGTON failed to consistently allow M.S. to eat or drink in class, and on a field trip.

27.   During the 2014-2015 school year, ALLINGTON limited M.S.'s access to the restroom.

28.   During the 2014-2015 school year, ALLINGTON failed to implement M.S.'s

4
SECOND AMENDED COMPLAINT

academic accommodations.

29.    As a result of not receiving her accommodations, M.S. suffered from daily headaches, stomachaches, anxiety, and dangerous levels of blood sugar and ammonia.

30.    Throughout the 2014-2015 school year, SILVA and MAGNUSON made complaints to ALLINGTON and PSD administrators about ALLINGTON's failure to provide M.S. her accommodations.

31.    The complaints took the form of requesting meetings with ALLINGTON, writing emails and letters to the school principal, and filing a formal complaint to PSD's school board alleging that ALLINGTON had violated Plaintiffs' rights under the ADA.

32.    In making their complaints of ALLINGTON, SILVA and MAGNUSON were emphatic but used proper channels and in a manner authorized by law.

33.    In January 2015, the principal of the school, Daniel Kanga ("Kanga") and ALLINGTON, banned MAGNUSON from ALLINGTON's classroom, and from the school for the remainder of the school year.

34.    Defendants also prohibited SILVA and MAGNUSON from communicating with ALLINGTON, requiring instead that all communications go through the school principal.

35.    By banning MAGNUSON from the school, Defendants deprived MAGNUSON the ability to get to M.S. in case of a medical emergency as required in M.S.' health care plan.

36.    By preventing direct communication with ALLINGTON Defendants made it difficult for SILVA and MAGNUSON to relay M.S.' disability related needs to her teacher.

37.    On or about February 2015, SILVA and MAGNUSON filed a formal letter of complaint to PSD's superintendent's office alleging that ALLINGTON had violated the disability rights of M.S' and engaged in retaliation against the parents.

38.    Starting in February 2015, SILVA and MAGNUSON refrained from complaining directly to ALLINGTON about their concerns regarding M.S.' accommodations.

39.    Thereafter, ALLINGTON was on maternity leave for the remainder of the school year.

40.    During the 2015-2016 school year, ALLINGTON was no longer M.S.' teacher.

41.    On August 26, 2015, SILVA and MAGNUSON met privately with Kanga to discuss M.S.' health care plan.

42.    At the August 26, 2015 meeting, SILVA and MAGNUSON stated their concern to Kanga that ALLINGTON had violated M.S.' rights under the ADA in the previous school year.

43.    Kanga disclosed to ALLINGTON that parents had made an ADA complaint about ALLINGTON.

44.    On September 1, 2015, ALLINGTON filed for civil restraining orders against SILVA and MAGNUSON.

45.    ALLINGTON wrote in her request for a restraining order that SILVA and MAGNUSON met with her school principal to discuss things that are happening and they were "constantly nit picking everything I do."

46.    On September 8, 2015, SILVA and MAGNUSON were served with temporary restraining orders prohibiting them from contacting, or coming within 100 yards of ALLINGTON, her work place, home, car, her family, and school of her children.  As a result, SILVA and MAGNUSON were effectively excluded from entering the school M.S. attended.

47.    On September 25, 2015, at the hearing on the petition for the restraining orders, ALLINGTON testified that she wanted Plaintiffs to leave her alone, and that the August 26, 2015 meeting with Mr. Kanga was not necessary.

48.    PSD's principal, Kanga, also attended the hearing on the restraining order and testified on behalf of ALLINGTON.

49.    On September 25, 2015, the court granted a civil harassment restraining order under the same terms as the temporary restraining order, to be effective for three years.

50.    On September 25, 2015, SILVA and MAGNUSON withdrew M.S. from PSD.

6
SECOND AMENDED COMPLAINT

51.     SILVA and MAGNUSON withdrew M.S. from school because the restraining order prevented them from having access to her while she was at school in the event of a medical emergency, and because they would not be able to attend school meetings regarding her disability related needs.

52.     Since September 2015, SILVA and MAGNUSON have refrained from allowing M.S. to attend birthday parties and community events where her former schoolmates were present in fear of running into ALLINGTON.

53.     On November 20, 2015 SILVA and MAGNUSON appealed the restraining orders on the grounds that their actions did not constitute harassment because they were engaging in protected activity, and they deny they engaged in harassment.

54.     On August 16, 2017, the California Court of Appeals heard oral argument on Plaintiff SILVA and MAGNUSON's appeal of the restraining order.

55.     On October 31, 2017 the Court of Appeals ordered a complete reversal of the civil harassment order.

56.     The Court of Appeals ordered the reversal of the civil harassment order on the grounds that (1) even in light most favorable to ALLINGTON, (2) there was insufficient evidence of either a credible threat of violence or harassing course of conduct, and (3) even if the evidence *had* demonstrated a harassing course of conduct, it was insufficient to show that the harassment was likely to recur in the future. *A. A. v. J. M.* (Cal. Ct. App., Oct. 31, 2017, No. B268545) 2017 WL 4927701, at *1.

57.     On February 2, 2018, the California Superior Court reversed the civil harassment order.

## **CLAIM PRESENTATION**

58.     On November 19, 2015, pursuant to Government Code section 910, et. seq., Plaintiffs presented administrative claims for damages to PSD.

59.     On January 4, 2016, Plaintiffs' administrative claim for damages were deemed

rejected as a matter of law.

60.     On July 7, 2017, the Superior Court of California ordered that M.S. is relieved from the requirements of Government Code, section 945.4 only as to events alleged in the proposed claim that occurred on or after November 19, 2014 and on or before September 25, 2015.

61.     Plaintiffs M.S., SILVA, and MAGNUSON have fully complied with the administrative claim presentation requirements of the Government Claims Act set forth in Government Code, section 900 et seq.

## EXHAUSTION

62.     On or about April 5, 2016, Plaintiff M.S. filed with California's Office of Administrative Hearings ("OAH") an administrative due process complaint against PSD pursuant to 20 U.S.C. § 1415(f) of the Individuals with Disabilities Education Act ("IDEA"). The Due Process Complaint alleged that Defendant PSD violated the IDEA when they failed to assess M.S. for her needs related to a learning disability, hearing loss, anxiety, fine motor sills, and for failing to provide her with goals and services related to those needs.

63.     In addition to the IDEA related allegations, the administrative complaint alleged that PSD committed the violations of the Americans with Disabilities Act (the "ADA") and Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act") by failing to implement the accommodations in her individualized health care plan and retaliating against SILVA and MAGNUSON by filing a restraining order.

64.     On or about June 30, 2016, M.S. and PSD settled those claims raised under the IDEA, 20 U.S.C. 1400 et seq. only.

65.     In the June 30, 2016 settlement agreement, M.S. and PSD expressly and explicitly agreed that (a) the settlement constituted exhaustion of all administrative remedies under the IDEA, (b) the settlement did not waive all other claims, including

SECOND AMENDED COMPLAINT

claims related to government tort liability, the Unruh Act, the Rehabilitation Act and the ADA ("excluded claims"), and (c) that the settlement did not preclude M.S. or her parents from bringing forth excluded claims.

66.     M.S. has thus exhausted all available administrative remedies required by law to be exhausted prior to the brining of this action, with the exception of remedies which would be futile for which exhaustion is otherwise excused.


### FIRST CLAIM OF RELIEF
VIOLATIONS OF THE ADA
ANTI-RETALIATION PROVISION
(By Plaintiffs Magnuson & Silva against All Defendants)


67.     Paragraphs 1 through 57, inclusive, and paragraphs 62 through 66, inclusive, of this Complaint are incorporated by this reference as though fully set forth herein.

68.     Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of the public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

69.     PSD is a public entity that receives state and federal funding and is therefore subject to ADA Title II.

70.     By virtue of her disability as described in paragraphs 17 through 19, inclusive, M.S. is a qualified individual with a disability within the meaning of the Americans with Disabilities Act ("ADA") and regulations issued thereunder.

71.     At all times relevant to this complaint, M.S.' disability substantially limited her major life activities including her ability to learn, concentrate and attend school.

72.     M.S. required the accommodations described in paragraph 20 through 24, inclusive, and those provided in her Individualized Education and Health Care plans in order to attend school, receive the benefit of PSD's programs, and ensure that she had

meaningful access to PSDs programs comparable to the access provided to non-disabled students.

73.     Defendants knew about M.S. disability related needs because they afforded her with special education and related services described in paragraphs 22 through 24.

74.     Defendants failed to provide M.S. with her related aides, services and accommodations in the manner described in paragraphs 26 through 28, inclusive, 33 through 36 inclusive by depriving her the ability to eat, drink and use the restroom as needed and by failing to allow parents to have access to her in school, thereby discriminating against her by sole reason of her disability.

75.     The anti-retaliation provisions of Title II of the ADA prohibit Defendants from retaliating against any individual who opposes any act or practice made unlawful by the ADA.

76.     Through the acts described in paragraphs 30 through 32, inclusive, 41 and 42, SILVA and MAGNUSON complained to Defendants that ALLINGTON was not providing M.S her accommodations in an effort to secure the rights of their daughter, Plaintiff M.S. under the ADA.

77.     Consequently, Defendants took adverse action to stop the complaints by barring MAGNUSON from M.S.' classroom, prohibiting SILVA and MAGNUSON from communicating with M.S.' teacher, and in September 2015 securing first a temporary, then a three-year restraining order to prevent SILVA and MAGNUSON entering M.S.' school, as described further in paragraphs 33 through 36, inclusive, 43 through 51, inclusive.

78.     ALLINGTON filed the restraining order immediately after SILVA and MAGNUSON complained to the school principal that ALLINGTON had violated the ADA rights of M.S. as described in paragraphs 42 through 44, inclusive.

79.     In ALLINGTONS testimony in the hearing on the restraining order, as described in paragraphs 45 and 47, she admits that the reason for filing the request was to stop SILVA and MAGNUSON from complaining about her regarding M.S.

SECOND AMENDED COMPLAINT

80.     PSD's principal, Mr. Kanga, disclosed SILVA and MAGNUSON's complaints to ALLINGTON and appeared at the hearing to testify on behalf of ALLINGTON.

81.     The adverse actions described in paragraphs 77 through 80, inclusive, interfered with the accommodations provided to M.S. in her Individualized Education Program and Health Care Plan that required parents the ability to communicate with ALLINGTON regarding M. S. academic accommodations, and that allowed parents to enter school in the event of medical emergency.

82.     The adverse actions described in paragraphs 77 through 80, inclusive, resulted in the exclusion of M.M.M.S from her school as described in paragraphs 50 and 51.

83.     Under the ADA, Plaintiffs SILVA and MAGNUSON are entitled to recover general damages, special damages, according to proof for the injuries they suffered set forth above.

## SECOND CLAIM OF RELIEF

### VIOLATIONS OF THE REHABILITATION ACT

### ANTI-RETALIATION PROVISION

(By Plaintiffs Magnuson & Silva against All Defendants)

84.     Paragraphs 1 through 57, inclusive, and paragraphs 62 through 66, inclusive, of this Complaint are incorporated by this reference as though fully set forth herein.

85.     Under the Rehabilitation Act, a qualified individual with a disability may not, solely by reason of her disability, be subjected to discrimination, excluded from participation in, or denied the benefits of, any program or activity receiving Federal financial assistance. 29 U.S.C. § 794(a).

86.     Under the Rehabilitation Act, the phrase "program or activity" includes a local educational agency. 29 U.S.C. § 794(b) (2) (B).

87.     PSD is a local education agency that receives federal funding. Accordingly, it is subject to the Rehabilitation Act.

88.     PSD is required to provide a Free Appropriate Public Education under the Rehabilitation Act, "regardless of the nature or severity of the person's [disability]." 34 C.F.R. § 104.33(a). Districts are required to provide services "designed to meet individual educational needs of [disabled] persons as adequately as the needs of [nondisabled] persons are met. 34 C.F.R. § 104.33(b).

89.     By virtue of her disability as described in paragraphs 17 through 21 inclusive, Plaintiff M.S. is a qualified individual within the meaning of the Rehabilitation Act and regulations issued thereunder.

90.     Defendants failed to provide M.S. a Free and Appropriate Public Education by failing to provide her with related aides, services and accommodations in the manner described in paragraphs 26 through 28, inclusive, 33 through 36, inclusive, and 74.

91.     Pursuant to the Rehabilitation Act, which incorporates anti-retaliation provision from Title VI of the Civil Rights Act, Defendants and other PSD employees, acting in their official and individual capacity, are prohibited from retaliating against MAGNUSON or SILVA because either MAGNUSON or SILVA made complaints or advocated for M. S.' rights under the Rehabilitation Act. 34 C.F.R. 104.61 &34 C.F.R. 100.7(e).

92.     SILVA and MAGNUSON engaged in protected activity as described in paragraph 76.

93.     Defendants and each of them, acting in their individual and official capacities, took a series of adverse actions as described in paragraph 77 through 80, inclusive, in direct response to the aforementioned protected activity, for the purpose of preventing SILVA and MAGNUSON from complaining about ALLINGTON.

94.     The aforementioned adverse actions interfered with M.S. access to PSD programs and resulted in her exclusion from her school as described in paragraphs 81 and 82.

95.     Under the Rehabilitation Act, MAGNUSON and SILVA are entitled to recover general, and special damages according to proof for the injuries they suffered as set forth above.

### **THIRD CAUSE OF ACTION**

VIOLATIONS OF THE UNRUH ACT

(By all Plaintiffs against all Defendants)

96.     Paragraphs 1 through 66, inclusive, of this Complaint are incorporated by this reference as though fully set forth herein.

97.     As defined for purposes of the Unruh Civil Rights Act (the "Unruh Act") by subdivision (e)(1) of section 51 of the Civil Code, and described in Paragraphs 17 through 21, inclusive, Plaintiff M.S. has a disability within the meaning of that Act.

98.     Plaintiffs SILVA and MAGNUSON are associated with Plaintiff M.S within the meaning of the act, because they are her parents and hold the right to consent to the implementation of her disability related accommodations in school

99.     Defendant PSD is a business establishment for the purposes of the Unruh Act.

100.    Defendant ALLINGTON is an employee of Defendant PSD and is sued in both her official and individual capacity.

101.    Pursuant to subdivision (f) of section 51 of the Civil Code, the ADA violation committed by Defendants as alleged in paragraphs 67 through 83, inclusive, also constitutes a violation of the Unruh Act.

102.    In engaging in the actions described in paragraphs 74, 77 through 82, inclusive, Defendants engaged in discriminatory conduct that denied, aided or incited a denial of the rights of Plaintiff M.S. to enjoy the full and equal access to her accommodations and her school, and denied the rights of Plaintiffs SILVA and MAGNUSON by their association with M.S.

103.    As described in paragraphs 74, 77 through 82, inclusive, Defendants' actions were intentional, willful, and affirmatively discriminatory towards Plaintiffs' rights under the Unruh Act because (1) Defendants stated reason to engage in those actions was to prevent SILVA and MAGNUSON from complaining about ALLINGTON or having access to ALLINGTON, and (2) the effect of a restraining order would leave

13

SECOND AMENDED COMPLAINT

1  Plaintiffs with no choice by to dis-enroll M.S. from the school.

2  104.   Under the subdivision (a) of section 52 of the Civil Code, SILVA, MAGNUSON

3  and M.S. are entitled to recover statutory damages, general damages as well as treble

4  damages according to proof.

5

6  ## PRAYERS

7

8      WHEREFORE, Plaintiffs pray judgment as follows:

9      1. On ALL COUNTS, for general damages, according to proof;

10      2. On COUNTS 1 and 2, for special damages, according to proof;

11      3. On COUNT 3, statutory damages, general damages, special damages and

12  treble damages;

13      4. For reasonable attorney fees;

14      5. For ordinary costs of litigation; and

15      6. For such other and further relief as the Court may deem just and proper.

16

17

18  DATED: July 18, 2018                    LAW OFFICES OF HIRJI & CHAU, LLP

19                                 *//s// Rosa Hirji*

20  –                                       ROSA HIRJI, ESQ.
                                            Attorney for Plaintiff's
21

22

23

24

25

26

27

28

14
SECOND AMENDED COMPLAINT